# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **MARK HANNA** | * | **CIVIL ACTION NO.  15-2851** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **JAMES LEBLANC ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>**MEMORANDUM RULING AND REPORT AND RECOMMENDATION**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions to dismiss for failure to state a claim upon which relief can be granted and for lack of jurisdiction, [docs. # 20, #24], filed by Defendants Louisiana Department of Public Safety and Corrections, the Office of Motor Vehicles, and Secretary of the Louisiana Department of Public Safety and Corrections, James LeBlanc. Also before the court are two motions filed by Plaintiff Mark Hanna: 1) a motion for leave to file a third amended complaint, [doc. #72]; and 2) a motion for recovery of service costs, [doc. #78].

For reasons explained below, it is recommended that the motion to dismiss filed by the Louisiana Department of Public Safety and Corrections and the Office of Motor Vehicles be **GRANTED** and that Plaintiff's claims against said Defendants be **DISMISSED WITHOUT PREJUDICE**. It is further recommended that the motion to dismiss filed by Secretary LeBlanc be **GRANTED** and that Plaintiff's claims against him be **DISMISSED WITH PREJUDICE**. Plaintiff's motion for leave to file a third amended complaint is **DENIED** as **MOOT**. Plaintiff's motion for recovery of service costs is **DENIED**.

### <u>Background</u>

1

*Pro se* Plaintiff Mark Hanna filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on December 18, 2015, against Defendants Secretary of the Louisiana Department of Public Safety and Corrections, James LeBlanc ("Secretary LeBlanc"), the Louisiana Department of Public Safety and Corrections ("LDPSC"), and the Louisiana Department of Motor Vehicles ("OMV") (collectively the "Defendants"). Hanna alleges that the Defendants refused to reinstate his Louisiana driver's license without due process and equal protection of law, in violation of the Fourteenth Amendment, and in retaliation for a state law petition that Hanna filed challenging his license reinstatement fees, in violation of the First Amendment. [doc. #6, ¶ 2].

Hanna's driver's license was suspended for failure to appear for or pay three traffic citations, and also for twice allowing his car insurance to lapse. Sometime prior to December 2015, Hanna filed a state court petition challenging the approximately $975.00 in fees imposed on him. Prior to filing a state court petition, Hanna claims that the OMV told him his license was suspended pending remittance of the fees. *Id.* ¶ 4. Hanna claims that he appeared at the Ruston, Louisiana, OMV in December 2015 to pay the reinstatement fees, but that the OMV refused to accept his payment because he had filed a lawsuit challenging the fees. *Id.* ¶ 5.

He further complains that the LDPSC has refused to provide him with an administrative hearing concerning his suspended license in connection with the lapse of his car insurance while he was incarcerated. *Id.* ¶ 8. Relatedly, he argues that LA. R.S. § 32:863(D) is unconstitutional where it allows monetary sanctions to be imposed on incarcerated persons for lapsed car insurance without prior notice or a hearing. [doc. #33, ¶ 29].

Lastly, Hanna contends that the Defendants arbitrarily, and in violation of the equal protection clause, imposed multiple $100.00 reinstatement fees on him for failing to appear for or pay tickets, where only a $50.00 reinstatement fee is allowed under LA. R.S. § 32:57.1. *Id.* ¶ 18.

On October 3, 2016, Defendants filed the instant motions to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted. [docs. #20, #24]. Hanna filed his response on November 4, 2016. [doc. #32]. Defendants filed a reply on January 5, 2017. [doc. #55]. Hanna has filed a sur-reply and a sur-sur-reply. [docs. #67, #85]. After many briefs, amendments, and filings, this matter is now ripe for decision.

## I.    Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  Motions filed under Federal Rule of Civil Procedure 12(b)(1) "allow a party to challenge the subject matter jurisdiction of the district court to hear the case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof is on the party asserting jurisdiction. *Id.* "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider . . . the jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

## II.    Jurisdictional Analysis

Hanna has brought suit against James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, the Louisiana Department of Public Safety and Corrections, and Office of Motor Vehicles. All three Defendants assert that they are entitled to sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

3

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. "Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state." *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). A State may not be sued in federal court by her own citizens or citizens of another state without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Sovereign immunity may be waived, but waiver must be unequivocally expressed. *Id.* at 99. Furthermore, Congress has the power to abrogate Eleventh Amendment immunity with respect to rights protected by the Fourteenth Amendment, but congressional intent to so abrogate must be unequivocal. *Id.* The section of the Civil Rights Act of 1871 which creates a cause of action for deprivation of civil rights under color of law (42 U.S.C. § 1983) did not abrogate the Eleventh Amendment immunity of the states. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). "[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). "A dismissal for lack of jurisdiction will not be affirmed unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Warnock*, 88 F.3d at 343.

## 1. The Louisiana Department of Public Safety and Corrections and the Office of Motor Vehicles

The Louisiana Department of Public Safety and Corrections and the Office of Motor Vehicles enjoy sovereign immunity under the Eleventh Amendment. "[A] state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the

state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 908.

Moreover, Louisiana has not waived its Eleventh Amendment immunity from federal court jurisdiction. LA. R. S. § 13:5106(A); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *Bernofsky v. Road Home Corp.*, 741 F.Supp.2d 773, 779-80 (W.D. La. 2010). The Fifth Circuit has already held that section 1983 actions against the LDPSC are barred. *Champagne*, 188 F.3d at 314 (suggesting that all Louisiana executive departments have Eleventh Amendment immunity).

As a division within the LDPSC, the Office of Motor Vehicles is entitled to the same immunity. LA. R. S. § 36:401(C)(b)(i); *See Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988) (holding that the Board of Dentistry, as part of the Department of Health and Human Services, is entitled to immunity); *Darlak v. Bobear*, 814 F.2d 1055, 1059-60 (5th Cir. 1987) (finding that Charity Hospital, as part of the Department of Health and Human Resources, is immune from suit); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186-87 (5th Cir. 1986) (reasoning that the Louisiana Wildlife and Fisheries Commission, as part of the Department of Wildlife and Fisheries, was immune from a § 1983 suit).

Accordingly, it is recommended that the motion to dismiss filed by the LDPSC and the OMV be GRANTED and that Plaintiff's claims against said Defendants be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

### 2. Secretary James LeBlanc

The Eleventh Amendment immunity bar extends to state officials when they are sued in

their official capacities for retrospective monetary relief. *Strong v. Grambling State U.*, 159 F.Supp.3d 697, 706 (W.D. La. 2015) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). On the other hand, the Eleventh Amendment does not bar monetary relief for past harms when the state official is sued in his individual capacity and will be personally liable for the judgment. *Henley v. Simpson*, 527 Fed. App'x 303, 305 (5th Cir. 2013). "That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Additionally, state officials may be prospectively enjoined by a federal court from committing unconstitutional acts. *Edelman*, 415 U.S. at 664; *Ex Parte Young*, 209 U.S. 123 (1908). To obtain declaratory and injunctive relief, a plaintiff must establish standing by showing:  1) injury in fact; 2) causation; and 3) redressability. *Gregory v. Texas Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004).  Thus, if the state official does not have authority at the time of suit to redress the plaintiff's complaints, then the exception is inapplicable.  *Id.*

Secretary LeBlanc argues that he was sued only in his official capacity, and is thus immune from suit for monetary damages. [doc. #24, p. 4]. Hanna points out that he merely named Secretary LeBlanc in his complaint, but that he is suing Secretary LeBlanc in both his individual and official capacity. [doc. #32, p. 2]. Specifically, Hanna states that Secretary LeBlanc is sued in his individual capacity for the recovery of damages, and in his official capacity for the injunction. *Id.*

If it is not clear from the complaint whether a defendant has been sued in his official or individual capacity, the Fifth Circuit "look[s] to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued." *Hopkins v. Gusman*, No. 06-5022, 2007 WL 2407247, *4 (E.D. La. Aug. 17, 2007); *Hardesty v.*

6

*Waterworks Dist. No. 4 of Ward Four*, 954 F.Supp.2d 461, 470 (W.D. La. 2013).

Construing Hanna's complaint liberally, the Court finds that Hanna intended to sue Secretary LeBlanc in both his official and individual capacities. The relief sought by Hanna in his complaint is pertinent. Hanna is suing for both monetary and injunctive relief. Monetary relief is only available against Secretary LeBlanc individually, and therefore, the Court assumes Hanna intended to sue him in his individual capacity. *See Senu-Oke v. Jackson State U.*, 521 F.Supp.2d 551, 558 (S.D. Miss. 2007); *Simmons v. Trowbridge*, No.3:11-CV-440-CWR-LRA, 2013 WL 2458463, *4 (S.D. Miss. June 4, 2013); *Hardesty*, 954 F.Supp. 2d at 472-73 (noting that plaintiff requests compensatory and punitive damages, indicating a claim against the defendants in their individual capacities). Furthermore, reviewing the course of proceedings, Secretary LeBlanc has asserted a defense of qualified immunity indicating that perhaps he thought he had been sued in his individual capacity (since a government official sued in his official capacity cannot rely on qualified immunity). *See Simmons*, 2013 WL 2458463, *4; *Hardesty*, 954 F.Supp.2d at 472.

Accordingly, Secretary LeBlanc is not entitled to Eleventh Amendment immunity for Hanna's claims against him in his individual capacity for monetary damages or for prospective injunctive relief in his official capacity. Therefore, the Court will address Secretary LeBlanc's motion to dismiss for failure to state a claim upon which relief can be granted. [doc. #24].

### III.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal*, 556 U.S. at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 555-56.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations omitted). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Id*.[1]

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153-54 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319,

---

[1] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

327 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations and internal quotation marks omitted).

## IV.    Analysis

### 1. Section 1983 Framework

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983)). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.*  (citation omitted). The first inquiry is whether Plaintiff has alleged a violation of a constitutional right at all. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

Moreover, in order to plead a § 1983 cause of action against persons acting in their individual capacity, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James*

*v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Additionally, "officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" or vicarious liability. *Iqbal*, 556 U.S. at 676. "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). "To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates." *Id.* Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 447.

Additionally, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).

When, as here, a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, the plaintiff must (1) "claim that the defendants committed

10

a constitutional violation under current law," and (2) "claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Pearson*, 808 U.S. at 181)).

### 2. Hanna's Claims

#### A. Equal Protection under the Fourteenth Amendment

Hanna alleges that his equal protection rights were violated when Secretary LeBlanc imposed on him $100.00 reinstatements fees for failing to appear for or pay traffic citations, where Louisiana law only permits $50.00 reinstatement fees.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from state governmental action that works to treat similarly situated individuals differently. *John Corp. v. City of Houston*, 214 F.3d 573, 586 (5th Cir. 2000). To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently due to his membership in a protected class and that the unequal treatment stemmed from discriminatory intent. *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 228 (5th Cir. 2008). However, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 120 S.Ct. 1073, 1074 (2000). Hanna does not allege that he has been treated differently due to his membership in a protected class. Thus, the Court must

determine if he has sufficiently pleaded an equal protection claim under a "class of one" theory.

Louisiana Revised Statute § 32:57.1(A) provides,

A. Whenever an arrested person who was released on his written promise to appear before a magistrate at the place and time specified in a summons described in R.S. 32:391(B) fails to honor his written promise to appear, the magistrate or judge of the court exercising jurisdiction shall immediately forward to the Department of Public Safety and Corrections notice of the failure to appear, with information necessary for identification of the arrested person. Thereupon, unless the original charges have been disposed of, the Department of Public Safety and Corrections shall immediately notify the arrested person of suspension of his operator's license and **the imposition of a fifty-dollar fee**, regardless of the disposition of the original charge. The Department of Public Safety and Corrections likewise shall inform the arrested person that his operator's license cannot be renewed or reissued until the forwarding court exercising jurisdiction certifies that he had honored the appearance promise or paid an appropriate fine for the offense as determined by the forwarding court exercising jurisdiction.

LA. R. S. § 32:57.1(A) (emphasis added).

Attached to Hanna's pleadings is a document titled "Louisiana Office of Motor Vehicles Driver Reinstatement Status" that he received when he visited the Shreveport and Ruston OMVs in September and December 2015. Both documents show three motor vehicle tickets for which Hanna failed to appear for or pay. [doc. #1, Exhs. B-1, C-1]. Each ticket entry states the following, "You must submit a paid receipt or documentation indicating a new court date was given and a reinstatement fee of $100.00 in order to reinstate this suspension." *Id.* Hanna argues that Secretary LeBlanc arbitrarily and without rational basis imposed a $100.00 fee on him when § 32:57.1 only authorizes a $50.00 fee.

A plain reading of subsection (B) of § 32:57.1 shows that a payment of <u>an additional fifty dollars</u> must be paid before a license can be reissued or renewed. Subsection B provides, in pertinent part,

B. Whenever the arrested person makes an appearance as required by Subsection A

> hereof or pays an appropriate fine for the offense committed, as determined by the court, the prosecuting authority shall immediately notify the Department of Public Safety and Corrections thereof. Upon such notification **and payment of an additional fifty dollars to the department**, **the operator's license of the arrested person shall be renewed or reissued** for the purpose of this Section.

LA. R. S. § 32:57.1(B) (emphasis added). Thus, imposing a $100.00 reinstatement fee on Hanna for each of his citations was authorized by Louisiana law. Even assuming *arguendo* that Secretary LeBlanc was personally involved in imposing fees on Hanna, Hanna has failed to allege that he was intentionally treated differently from similarly situated individuals.[2]

Accordingly, Hanna's equal protection claim against Secretary LeBlanc should be DISMISSED WITH PREJUDICE.

### B. Due Process under the Fourteenth Amendment

Hanna alleges that he was not provided notice and an administrative hearing before his driver's license was "blocked" and monetary sanctions were imposed on him for failing to maintain car insurance while incarcerated. [doc. #6, ¶ 8; doc. #33, ¶22]. Relatedly, Hanna argues that LA. R.S. § 32:863(D) is unconstitutional where it allows sanctions to be imposed on incarcerated persons for lapsed car insurance without prior notice or a hearing. [doc. #33, ¶ 29].

The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." U. S. CONST., amend. XIV. To state a § 1983 claim for a due process violation, "a plaintiff must first identify a

---

[2] Every indication on the Louisiana Department of Public Safety, Office of Motor Vehicle's website establishes that a $100.00 reinstatement fee—not a $50.00 fee—is owed for reinstatement of a driver's license under § 32:57.1 for failure to appear for or pay tickets. LA. OFFICE OF MOTOR VEHICLES PUBLIC SAFETY SERVS., http://www.expresslane.org/Pages/faqs/fic_q10.aspx (last visited Dec. 19, 2016); LOUSIANA.GOV, OFFICE OF MOTOR VEHICLES, http://web01.dps.louisiana.gov/omv1.nsf/47c22a6b4cac67ec862570c90053bd7f/ce2ed556a3e46c6f862565920068d1b2 (last visited Dec. 19, 2016).

protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted). A driver's license is a protected property interest that cannot be taken away by the State without procedural due process. *Bell v. Burson*, 402 U.S. 525 (1971).

Procedural due process requires fair notice of impending state action and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Notice and the hearing are two distinct features of due process, and are thus governed by different standards. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Due process only requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Due process does not require actual notice. *Jones v. Flowers*, 537 U.S. 220, 244 (2006). The failure of notice in a specific case does not establish the inadequacy of the attempted notice. *Id.* at 231. "Under most circumstances, notice sent by ordinary mail is sufficient to discharge the government's due process obligations." *Armendariz-Mata v. U.S. Dept. of Justice, Drug Enforcement Admin.*, 82 F.3d 679, 683 (5th Cir. 1996).

Prior to the imposition of sanctions for lapsed car insurance, Louisiana law states that the Secretary "shall send written notice to the owner, lessee, or other person against whom sanctions are intended at the last address furnished to the department." LA. R.S. § 32:863(D).(1). A hearing may then be requested within ten days from the date of notice. *Id.* "Sanctions shall not be imposed until all rights for appeal have expired or been exhausted." *Id.*[3]

---

[3] It is settled that the violation of a state law does not, in and of itself, constitute a federal due process violation. *Ware v. Lafayette City-Parish Consolidated Gov't*, No. 08-0218, 2009 WL 5876275, *11 (W.D. La. Jan. 6, 2009) (citing *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 711 (7th Cir. 2004)).

Hanna's driver's license restatement status indicates that his vehicle registration and driver's license was "blocked," and fines were imposed, because he failed to maintain car insurance while he was incarcerated. [doc. #1, Exhs. B-1, C-1].[4] While incarcerated the first time, Hanna wrote to the LDPSC on August 11, 2015, asking for a hearing on the issue of sanctions. [doc. #1, Exh. A-6]. His request was denied as untimely. *Id.* Exh. A-11. While incarcerated the second time, Hanna asserts that "within thirty days after the arrest [he] notified the department by certified mail that [he] was in jail unable to maintain [his] insurance on the vehicle or surrender vehicle plates at an OMV." [doc. #33, ¶ 22]. He alleges that he again asked for a hearing on the issue of sanctions, but that he never heard from the department and more sanctions were imposed. *Id.*

In *Armendariz-Mata*, the Fifth Circuit held that notice of forfeiture proceedings by certified mail to the Plaintiff's home was inadequate when the government knew the Plaintiff was incarcerated. 82 F.3d at 683. *See Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (finding notice inadequate when "the State knew that [the owner] was not at the address to which the notice was mailed and, moreover, knew also that [the owner] could not get to that address since he was at that very time confined."); *DiPiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (distinguishing *Armendariz-Mata* because Plaintiff "was not incarcerated and the City had no information about plaintiff's whereabouts that would give reason to suspect he would not actually receive notice mailed to his last known address.").

_____

[4] Under Louisiana law, when the LDPSC receives notification from an insurance company that the liability insurance has been cancelled on a vehicle, a "no insurance" block is set in the master driver's license and vehicle records if a revocation is in effect and fees are due. *See* LA. R.S. § 32:861. A "no insurance" block was set to Hanna's license because, at the time, his driver's license was suspended for failure to appear for or pay three traffic citations. *See* doc. #1 Exhs. B-1, C-1. A "no insurance" block prevents the renewal or issuance of a driver's license and vehicle registration. *Id.*

In *Snider Intern. Corp. v. Town of Forest Heights, Md.*, Plaintiffs challenged speed cameras in Maryland that imposed civil penalties for speed violations and gave notice of the violation by mail. 739 F.3d 140, 146-47 (4th Cir. 2014). Finding no procedural due process violation, the Fourth Circuit noted that "[i]t is difficult to imagine a more reasonable attempt at effectuating actual notice of a driving infraction than the use of registration information collected by the state's transportation agency." 739 F.3d 140, 146-47 (4th Cir. 2014). However, the Court also held, "[s]o long as the agency did not have reason to believe that the citation recipient could not be reached at that address, the mailed notice would be sufficient." *Id.* at 147 (citing *Robinson*, 409 U.S. at 39-40).

Noticeably absent from Hanna's pleadings is any contention that he notified *Secretary LeBlanc* that he was incarcerated. Indeed, Hanna explicitly states that he wrote to the LDPSC, notifying it that he was incarcerated and requesting a hearing. Individual liability under § 1983 must rest on facts reflecting the defendant's personal participation or involvement in the alleged wrong. Secretary LeBlanc had no reason to believe that Hanna would not receive notice at his last furnished address. Accordingly, notice sent to Hanna's last known address satisfied due process and Hanna's procedural due process claim against Secretary LeBlanc should be DISMISSED WITH PREJUDICE.[5]

Hanna also asserts that § 32:863(D) is unconstitutional where it allows sanctions to be

---

[5] Citing to no specific policies, Hanna alleges in his opposition that "a customary, historical traditional of deliberate indifference to the constitutionally-required due process needs of [incarcerated] persons (myself included) is implicitly-written (by omission) into Louisiana law." [doc. #32, p. 26]. For § 1983 liability to trigger, Hanna must allege that Secretary LeBlanc personally implemented specific, unconstitutional policies—which Hanna does not do. Furthermore, deliberate indifference is a stringent standard of fault under § 1983, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Hanna's allegations fall far short of this stringent standard.

imposed on incarcerated persons without notice or a hearing. The constitutional adequacy of a

law's procedures is assessed by balancing the private and governmental interests concerned.

*Mathews,* 424 U.S. at 334-35. First, courts consider "the private interest that will be affected by

the official action." *Id.* at 335. In this case, Hanna asserts that he was fined $500.00 each time his

car insurance lapsed. This is a relatively minor fine amount. *See Bevis v. City of New Orleans*,

686 F.3d 277, 280 (5th Cir. 2012) (noting that a maximum fine of $380 for a traffic citation was

"minor"). Next, we consider "the risk of an erroneous deprivation" under the procedures

provided. *Mathews*, 424 U.S. at 335. The procedures set forth in § 32:863(D) are more than

adequate and the risk of an erroneous deprivation of protected rights is minimal. As discussed

above, sending notice of a motor vehicle infraction via mail to the recipient's last known address

is almost always constitutionally sufficient. Furthermore, Louisiana law provides that recipients

may request a hearing, and sanctions cannot be imposed until all rights for appeal have expired or

been exhausted.

Finally, the private interest and risk of error are balanced against the "Government's

interest, including the function involved and the fiscal and administrative burdens that . . .

additional or substitute procedural requirement[s] would entail." *Id.* It is well known that a state

has a strong interest in reducing the risk of road accidents and maintaining public health and

safety.  In *Kaltenbach v. Breaux*, the court held that

> the state's requirements that all persons who operate motor vehicles on state
> highways possess a valid driver's license, safety inspection tag, and vehicle
> registration are valid exercises of the state's police power. The regulations are
> rationally related to the state's purpose in safeguarding the health and safety of its
> citizens, and the means employed by the state are rationally related to the purpose of
> the statutes.

*Kaltenbach v. Breaux*, 690 F. Supp. 1551, 1554-55 (W.D. La. 1988). The foregoing authority

17

compels a finding of constitutionality here. Whether § 32:863(D) *could* unconstitutionally impose fines on an incarcerated person would depend on the particular circumstances of that case. *See Armendariz-Mata*, 82 F.3d at 683. The court does not find that § 32:863(D)'s procedures render it unconstitutional as-applied to all incarcerated persons. Accordingly, Hanna's challenge to § 32:863(D), as-applied to all incarcerated persons, fails and should be DISMISSED WITH PREJUDICE.

### C. First Amendment Claims

Hanna asserts that Secretary LeBlanc refused to reinstate his driver's license in retaliation for Hanna's filing of a state court petition challenging his license reinstatement fees. Sometime prior to December 2015, Hanna filed a state court petition, challenging his driver's license reinstatement fees. Hanna claims that he went to the Ruston and Shreveport, OMV locations in December 2015 to renew his driver's license, but was told that his license could not be renewed because of his state court lawsuit. [doc. #6, ¶ 5; doc. #33, ¶ 19]. Furthermore, Hanna points out that his driver's license reinstatement status document states: "Our records indicate there is a petition filed against tthe [sic] department on your behalf. You may need to contact your attorney prior to reinstatement." [doc. #1, Exh. C-2].

To state a claim of First Amendment retaliation, an ordinary citizen must show that: 1) he was engaged in constitutionally protected activity, 2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). A plaintiff may demonstrate that his protected conduct was a substantial or motivating factor behind a defendant's action by providing direct evidence of a retaliatory

motive, or by relying upon "a chronology of events from which retaliation may plausibly be inferred." *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1425 (5th Cir. 1997) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

Hanna has satisfied the first prong, as the First Amendment provides a constitutional basis for the right of access to the courts. *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Indeed, it is well established that access to the courts is protected by the First Amendment right to petition for redress of grievances. *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979). As for the second prong, Hanna alleges that a person of ordinary firmness would not file a state court petition if he knew his driver's license would be revoked in response. Even assuming *arguendo* that Hanna has satisfied the second prong, Hanna has failed to establish the third prong—that Secretary LeBlanc's alleged actions were substantially motivated against Hanna's exercise of constitutionally protected conduct. Louisiana law provides that, following suspension of a driver's license for failure to appear, the "Department of Public Safety and Corrections . . . shall inform the arrested person that his operator's license cannot be renewed or reissued until the forwarding court exercising jurisdiction certifies that he had honored the appearance promise or paid an appropriate fine for the offense as determined by the forwarding court exercising jurisdiction." LA. R.S.§ 32:57.1. Hanna failed to appear for or pay three traffic citations in the Ruston City Court and Village of Fenton Mayors Court. [doc. #1, Exh. C-1]. Hanna has not alleged, or provided proof, that he followed the requirements of § 32:57.1, *i.e.*, he has failed to show that those courts have certified that he has honored the appearance or paid his fines. Thus, Secretary LeBlanc had a valid, legal reason for declining to reinstate Hanna's driver's license. *See Brady*, 113 F.3d at 1425 (denying First Amendment retaliation claim where appellants presented a believable, non-retaliatory reason for their actions).

Even if Hanna could satisfy the third prong, he has failed to plead conduct on the part of Secretary LeBlanc that shows he was personally involved in the decision not to reinstate Hanna's license. Hanna's entire First Amendment claim is based on the actions of other unnamed OMV officers. It is undisputed that Secretary LeBlanc did not personally refuse to accept Hanna's payment when he appeared at the OMV. Instead, Hanna claims that Secretary LeBlanc is personally liable because "the decision to withhold [Hanna's] license was plausibly not made by local field officers or supervisors, but by someone with power to make statewide decisions to withhold licenses, even for reasons not explicitly provided for in State law." [doc. #32, p. 28]. The simple fact that Secretary LeBlanc is head of the LDPSC does not support an inference that he was personally involved in the refusal to reinstatement Hanna's driver's license.

Accordingly, Hanna has failed to allege a violation of the First Amendment and his First Amendment claim against Secretary LeBlanc should be DISMISSED WITH PREJUDICE.

In sum, the court finds that Hanna's complaint fails to allege facts to support a finding that Secretary LeBlanc violated any of his constitutional rights. Accordingly, Secretary LeBlanc is entitled to qualified immunity. The court need not consider the second prong of the qualified immunity defense.[6]

## V.    Motion for Recovery of Service Costs

Hanna prays that service costs be assessed against Secretary LeBlanc in the amount of $196.15. [doc. #78]. Rule 4(d) provides,

(1) *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has

_____

[6]  The qualified immunity defense only applies "as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009).

been commenced and request that the defendant waive service of a summons. The notice and request must:

    (A) be in writing and be addressed:

        (i) to the individual defendant; or

        (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

    (B) name the court where the complaint was filed;

    (C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form

    (D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

    (E) state the date when the request is sent;

    (F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

    (G) be sent by first-class mail or other reliable means.

FED. R. CIV. P. 4(d)(1).

Furthermore, if "a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant" "the expenses later incurred in making service" and "the reasonable expenses . . . or any motion required to collect those service expenses." *Id*. 4(d)(2).

Hanna mailed a proposed waiver of service to Secretary LeBlanc on March 18, 2016. [doc. #11, p. 2]. On April 8, 2016, he filed a motion for service of the complaint by U.S. Marshal ("USM") if Secretary LeBlanc failed to sign and return the waiver of service. *Id.* at 4. On April 21, 2016, the Court ordered the USM to provide Plaintiff with the cost of effecting service on

Secretary LeBlanc, and, upon Hanna's receipt of same, Plaintiff was to remit that cost to the USM, along with addresses for any defendant he wished to serve. [doc. #13]. On May 2, 2016, Hanna responded that he wished Secretary LeBlanc to be served via USM at 504 Mayflower Street, Baton Rouge, LA 70802. [doc. #15]. Secretary LeBlanc was served by USM on August 8, 2016, and costs were assessed to Hanna. [doc. #18].

Secretary LeBlanc contends that, as a governmental entity, he is exempt from Rule 4's waiver requirement because service on state or local governments is governed by Rule 4(j). *See* FED. R. CIV. P. 4(j)(2); *see also Moore v. Hosemann*, 591 F.3d 741, 747 (affirming dismissal of plaintiff's motion for costs, and finding that "a state official sued in his official capacity is not subject to the mandatory waiver-of-service provisions of rule 4(d).").  However, the Court concludes that Secretary LeBlanc is subject to Rule 4(d)'s mandatory waiver-of-service provisions in his individual capacity. *See id.*

Secretary LeBlanc responds that, even if he is subject to Rule 4's mandatory waiver-of-service provisions, Hanna failed to comply with the requirements of Rule 4(d). Hanna has the burden to show entitlement to costs and fees under Rule 4. *See Flores v. Sch. Bd. of DeSoto Parish*, 116 Fed. App'x 504, 508 (5th Cir. 2004). Rule 4 may be satisfied "even if a plaintiff does not strictly comply with every formalistic requirement of the rule." *Id.*

Under the circumstances of this case, the court finds that Hanna has failed to carry his burden that he is entitled to costs. Hanna provides a handwritten copy of the document he purportedly sent to Secretary LeBlanc titled, "Notice and Waiver of Service in a Civil Action." He asserts that he  mailed the notice to Secretary LeBlanc at P.O. Box 64886 Baton Rouge, Louisiana. It does not appear that the waiver-of-service document had a copy of the complaint attached, 2 copies of the waiver form, or a prepaid means for returning the form as required by

Rule 4. While plaintiffs do not need to follow every formalistic requirement of Rule 4, failing to attach the complaint—the foremost document in any lawsuit to provide a defendant with notice of the claims against him or her—forecloses any award of costs. *See Suggs v. Central Oil of Baton Rouge, LLC*, No. 13-25-RLB, 2014 WL 3374719, *2 (M.D. La. July 9, 2014) (denying costs where plaintiff failed to comply with the specific requirements of Rule 4(d)(1)); *Chapman v. N.Y. State Div. for Youth*, 227 F.R.D. 175, 179 (N.D. N.Y. 2005) ("If the plaintiff complies with all of the notice requirements set forth in Rule 4(d), *which includes attaching a copy of the complaint*, then the defendant is compelled to execute the waiver of service or be confronted with bearing the cost of the personal service upon him) (emphasis added).

Hanna's request for recovery of service fees and costs is **DENIED.**

**Conclusion**

For the above assigned reasons,

Plaintiff's motion for leave to file a third amended complaint, [doc. #72], is **DENIED** as **MOOT.**

Plaintiff's motion for recovery of service costs, [doc. #78], is **DENIED.**

IT IS RECOMMENDED that the motion to dismiss for lack of jurisdiction, [doc. #20], filed by Defendants Louisiana Department of Public Safety and Corrections and the Office of Motor Vehicles be **GRANTED** and Plaintiff's claims against said Defendants be **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment.

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim, [doc. #24], filed by Secretary LeBlanc be **GRANTED** and that Plaintiff's claims against him be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

23

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

       **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

       In Chambers, at Monroe, Louisiana, this 8th day of March 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE